UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

TAMARA H.,

            Plaintiff,

   v.

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

            Defendant.

No. 1:21-cv-19353

OPINION

---

**APPEARANCES**:

Adrienne Freya Jarvis
LAW OFFICE OF ADRIENNE JARVIS
800 North Kings Highway, Ste. 304
Cherry Hill, NJ 08034

   *On behalf of Plaintiff*.

Philip R. Sellinger
UNITED STATES ATTORNEY
U.S. DEPARTMENT OF JUSTICE
401 Market Street
P.O. Box 2098
Camden, NJ 08101

Mark J. Dorval
SOCIAL SECURITY ADMINISTRATION
   OFFICE OF THE GENERAL
   COUNSEL, REGION III
P.O. Box 41777
Philadelphia, PA 19101

   *On behalf of Defendant*.

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court on Plaintiff Tamara H.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **AFFIRMS** the Acting Commissioner's decision.

### I.   BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

#### A.  Administrative History

Plaintiff filed a Title II application for a period of disability and disability benefits on December 20, 2015, and a Title XVI application for supplemental security income on August 29, 2016, alleging an onset date of disability beginning January 16, 2015. (AR 12). Plaintiff's claims were denied initially on March 11, 2016, and upon reconsideration on August 19, 2016. (AR 12). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") at which she appeared and testified on September 5, 2018, and which resulted in an unfavorable decision affirming the initial denials. (AR 12). Thereafter, Plaintiff requested the Appeals Council review the decision, and the Council remanded the case for further review on April 7, 2020. (AR 12). On November 19, 2020, Plaintiff appeared before ALJ Karen Shelton where both Plaintiff and vocational expert ("VE"), Carrol Warren, testified. (AR 12). In a decision dated February 12, 2021, the ALJ found that Plaintiff was not disabled under the Social Security Act. (AR 27).

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

### B. Plaintiff's Background and Testimony

Plaintiff was forty-one when she filed her application, and forty-seven on the date of the ALJ's decision. (AR 15, 26, 335). She currently lives with her son; however, her daughter was also living with her when she filed her application. (AR 112–13). Since she stopped working in 2014, Plaintiff's son has been assisting her with her bills. (AR 113).

Plaintiff testified to experiencing symptoms of swelling in her feet and hands, tingling, insomnia, cirrhosis of the liver, fatigue, anger issues, and mood swings. (AR 115–18, 123–33). Plaintiff spends a majority of her day in a recliner to elevate her feet to reduce swelling and stop tingling. (AR 119–20, 125–27). Plaintiff also described anger issues with others: she is quick to anger, and one episode resulted in an altercation in a Walmart parking lot. (AR 128–29). She also testified that her anger issues and mood swings have affected her personal relationships with her sisters and her daughter. (AR 128–29).

During the day, Plaintiff independently showers, changes, makes herself something to eat, and completes some household chores. (AR 120–21). Plaintiff relies on her son to help with those household chores and to go grocery shopping with her. (AR 120–21).

Plaintiff has past relevant work as bank teller, bank manager, and a cage cashier. (AR 368, 386–88). In 2003, Plaintiff started work as a part-time teller, and was promoted to full-time teller in 2005. (AR 136–37). Plaintiff was later promoted to branch operations manager. (AR 138). Plaintiff later "got sick," was admitted to a hospital, and went on medical leave. (AR 114). When Plaintiff sought to return from medical leave, she learned she had been terminated. (AR 114–15).

### C. Relevant Medical Evidence

The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive.

1. <u>Yves Georges Dubois, M.D.</u>

In October 2017, Plaintiff began treatment with Dr. Dubois. (AR 837). During an initial consultation, Dr. Dubois noted that Plaintiff was engaged, alert, oriented, and had relevant and goal-directed thought processes despite being tearful. (AR 837). As a result, Dr. Dubois discontinued Plaintiff's then existing Ambien prescription and lowered her dosage of Xanax. (AR 837). During Dr. Dubois's subsequent follow-up appointments in November 2017, January 2018, and December 2018, he made the same observations regarding her thought processes. (AR 840–41, 2066).

2. <u>J. Theodore Brown, Jr., Ph.D.</u>

In February 2016, Dr. Brown performed a consultative medical evaluation of Plaintiff. Dr. Brown diagnosed Plaintiff with depression, anxiety, and an unspecified learning disorder. (AR 675–79).

3. <u>Juan Carlos Cornejo, D.O.</u>

In February 2016, Dr. Cornejo performed a consultative evaluation of Plaintiff. (AR 680–84). Dr. Cornejo found that Plaintiff had normal concentration, clear and coherent speech, goal-directed thought processes, and intact comprehension and repetition functioning. (AR 683).

4. <u>Jeanette Maldonado, Psy.D.</u>

In March 2016, Plaintiff met with Dr. Maldonado. (AR 185–86). Dr. Maldonado found that Plaintiff had moderate limitations in concentration, persistence, or maintaining pace, however, these limitations were primarily based on physical impairments. (AR 185–86). Dr. Maldonado also found that Plaintiff was able to understand and remember simple instructions, make simple work-related decisions, sustain an ordinary routine, and work with others without being distracted by them. (AR 189). Ultimately, Dr. Maldonado found that Plaintiff would be able to perform "simple

tasks within the weekly demands of pace, of concentration for at least two hour[] period[s] and sustain tasks." (AR 189).

     5. <u>Luis Umpierre, Psy.D.</u>

In July 2016, Plaintiff met with Dr. Umpierre. (AR 203). Dr. Umpierre found that Plaintiff had moderate limitations in her ability to concentrate, persist, and maintain pace. (AR 203). Dr. Umpierre also found that Plaintiff was not significantly limited in her ability to maintain attention and concentration for extended periods, understand and remember simple instructions, make simple work-related decisions, and sustain an ordinary routine. (AR 207–08).

    **D. Vocational Expert's Testimony**

The VE testified regarding work that a hypothetical individual similarly situated to Plaintiff could perform. (AR 144). The VE testified that such an individual could perform work as an "addressing clerk" (DOT 209.587-010), "document preparer" (DOT 249.587018), and "table clerk" (DOT 239.687-014). (AR 144–45). The occupation "addressing clerk" is a sedentary and unskilled position with an SVP level of 2 that has 3,000 jobs in the national economy. (AR 144–45). The occupation "document preparer" is a sedentary and unskilled position with an SVP level of 2 that has 19,000 jobs in the national economy. (AR 145). The occupation "table clerk" is a sedentary and unskilled position with an SVP level of 2 that has 3,200 jobs in the national economy. The VE confirmed her testimony was "consistent with the DOT." (AR 145).

In the next hypothetical, the ALJ asked the VE if the "same individual needed the opportunity to stand up for 5 minutes after sitting for 30 to 45 minutes while remaining on task" could that person still perform these jobs, and the VE confirmed she could. (AR 145). The ALJ next asked if the same individual could walk for no more than 10 to 30 minutes at a time, but could still walk or stand for 2 of the 8 hours she was on the job each day, could she still perform these 3

jobs. (AR 145–46). The VE again answered that she could, confirming that none of the jobs required 2 consecutive hours of standing or walking. (AR 145–46).

During cross-examination, Plaintiff's counsel asked whether an individual's need to interact with supervisors and co-workers and an individual's need for re-instruction on the job daily would be consistent with the 3 hypothetical jobs. (AR 146–49). The VE explained such restrictions would not be consistent with these jobs. (AR 146–48). Plaintiff's counsel did not ask questions of the VE as to whether Plaintiff's need to stand for 5 minutes after 30 to 45 minutes on task would be consistent with the 3 hypothetical jobs and the DOT. (AR 146–49).

### E. The ALJ's Decision

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 27). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 16, 2015, the alleged onset date. (AR 15). At Step Two, the ALJ found the following severe impairments: autoimmune hepatitis, lumbar degenerative disc disease, degenerative joint disease of the knees bilaterally, fibromyalgia, obesity, and affective disorder. (AR 15).

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. (AR 15–19). Specifically, the ALJ reviewed the severity of Plaintiff's impairments to see if they met the Listing for major dysfunction of a joint(s) due to any cause characterized by gross anatomical deformity (Listing 1.02); disorders of the spine (Listing 1.04); chronic liver disease (Listing 5.05); depressive, bipolar and related disorders (Listing 12.04); undifferentiated and mixed connective tissue disease (Listing 14.06); or inflammatory arthritis (Listing 14.09). (AR 15–19). The ALJ also addressed whether Plaintiff's mental impairments could meet any Listing under either Paragraph

B or C criteria. (AR 18–19). The ALJ found that because Plaintiff's mental impairment does not cause at least two "marked" limitations or one "extreme" limitation, the Paragraph B criteria were not satisfied. (AR 19). The ALJ further found that because "there [was] no evidence of marginal adjustment," the evidence failed to establish the presence of the Paragraph C criteria. (AR 19).

Before proceeding to Step Four, the ALJ determined that Plaintiff retained the residual functioning capacity ("RFC") to perform—

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can only stand/walk for 2 hours in an 8 hour workday, but no more than 10-30 minutes at one time and sit for 6 hours in an 8 hour workday, but needs the opportunity to stand up for 5 min[utes] after sitting for 30-45 minutes while remaining on task; occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch or crawl; and frequently handle and finger. Additionally, she is able to understand remember and carry out simple, routine and repetitive task; work in a routine work environment with few changes; make simple work decisions; perform work that is goal oriented rather than strict quota oriented; can work for 2 hours before needing a break; and can have frequent contact with supervisors and coworkers, but no contact with the public.

(AR 19). Considering her RFC, the ALJ found at Step 4 that Plaintiff could not perform any relevant past work. (AR 26).

Finally, at Step 5, the ALJ found that a sufficient number of jobs exist in the national economy that Plaintiff could perform. (AR 26). During her testimony, the VE explained that Plaintiff could perform the occupations of "addressing clerk," "document preparer," and "table clerk." (AR 27, 144–46). In her opinion, the ALJ found that Plaintiff could perform the occupations "addressing clerk," "document preparer," and "*tube* clerk." (AR 27 (emphasis added)). However, the ALJ never asked the VE whether Plaintiff's RFC would allow her to work as a "tube clerk." (AR 27, 144–46). Of the three occupations—addressing clerk, document preparer, and tube clerk—the ALJ concluded that the work exists in significant numbers in the national economy.

7

(AR 27). Based on the foregoing, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (AR 27).

## II. LEGAL STANDARD

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 442, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 772 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

8

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assess the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's [RFC] is the most [he] can do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" The examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

9

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016).

### III.  DISCUSSION

On appeal, Plaintiff raises three arguments: (1) the ALJ's RFC assessment did not adequately reflect her finding of a moderate limitation in concentrating, persisting and maintaining pace; (2) the ALJ violated Social Security Ruling ("SSR") 00-4p with respect to the VE's testimony as to the alternation of the sitting and standing positions; and (3) the ALJ misstated the VE's testimony about the occupation the ALJ called "tube clerk" and other related errors.

For the following reasons, the Court finds that the ALJ's conclusions are supported by substantial medical evidence in the record and any errors are harmless with respect to her final decision. Therefore, the Court affirms the final decision of the Commissioner.

#### A. The ALJ'S RFC Assessment Adequately Reflects Her Finding of a Moderate Limitation in Concentrating, Persisting, and Maintaining Pace.

Plaintiff alleges that the ALJ's RFC assessment did not adequately reflect her finding of a moderate limitation in concentrating, persisting, and maintaining pace. Plaintiff bases her argument on *Hess v. Commissioner of Social Security*, 931 F.3d 198 (3d Cir. 2019) and *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), but for the following reasons, the Court finds that neither case supports remand here.

In *Hess*, the Third Circuit held that an ALJ does not need to include particular limitations in the RFC regarding a claimant's moderate difficulties in the functional domain. 931 F.3d 198, 210–14 (3d Cir. 2019). Further, the *Hess* Court determined that an ALJ only needs to provide a "valid explanation" when determining if moderate difficulties in concentration, persistence, or pace need to be incorporated in the RFC. *Id*.

In *Ramirez*, the Third Circuit determined that the ALJ's limitation to "simple tasks" was sufficient to address moderate deficiencies in concentration and persistence, but the limitation did not address deficiencies in pace. 372 F.3d 546, 554 (3d Cir. 2004). As a result, an ALJ's finding of moderate deficiencies in concentration, persistence, and pace must all be addressed in the limitations and be based on substantial evidence. *Ramirez v. Barnhart*, 372 F.3d 546, 550, 554 (3d Cir. 2004).

Here, the ALJ's decision both addresses all of the elements of the moderate deficiencies and is further based on substantial evidence. The ALJ's RFC assessment provides that Plaintiff is limited to "simple, routine and repetitive tasks; work in a routine environment with few changes; make simple work decisions; [and] perform work that is goal oriented rather than strict quota oriented." (AR 19). Similar to *Ramirez* and *Hess*, the ALJ provided the limitation of "simple, routine and repetitive tasks" which is indicative of the moderate deficiencies in concentration and persistence. (AR 19). Additionally, the limitations of "work in a routine environment with few changes; [and] make simple work decisions" are indicative of the moderate deficiencies in concentration and persistence. (AR 19). Unlike *Ramirez* and *Hess*, the ALJ provided another limitation: "perform work that is goal oriented rather than strict quota oriented," which addressed the moderate deficiency in pace. (AR 19).

In addition to relying on *Ramirez* and *Hess*, Plaintiff suggests that the ALJ's RFC analysis was inadequate because she failed to incorporate the findings of the previous ALJ assigned to Plaintiff's claim, who found that she would be off task "10% of the time in addition to normal breaks in an 8-hour workday; and would be absent from work 1 day per month." (Pla.'s Br., ECF No. 9 at 16). However, the current ALJ was not bound by the prior ALJ's decision or findings. When a Social Security disability case has been remanded, "decisions of ALJs are generally vacated and pertinent issues are reviewed *de novo*." *Yolyemal H. v. Comm'r of Soc. Sec.*, No. 20-19755, 2022 WL 901466, at *1 (D.N.J. Mar. 28, 2022) (citing *Rockriver v. Colvin*, No. 15-811, 2016 WL 5957567, at *1 (M.D.N.C. Oct. 12, 2016)). In contrast, "there is no requirement *preventing* the ALJ from reviewing . . . a vacated prior decision." *Norabeth D. v. Kijakazi*, No. 21-12874, 2022 WL 2952913, at *9 (D.N.J. July 26, 2022) (citing *Connelly v. Colvin*, No. 15-03351, 2016 WL 6902353, at *8 (E.D. Pa. Oct. 26, 2016)). Thus, the ALJ has no duty to use a prior ALJ's decision or findings to come to her own, but may do so.

While the current ALJ could have relied upon the prior ALJ's decision to craft Plaintiff's current RFC, there is no requirement that she do so. Therefore, Plaintiff's argument that the ALJ erred in not considering that the prior ALJ found that she would need to be off task "10% of the time in addition to normal breaks in an 8-hour workday; and would be absent from work 1 day per month" fails. Here, the ALJ used the medical records of five different medical experts—Dr. Dubois, Dr. Brown, Dr. Cornejo, Dr. Maldonado, and Dr. Umpierre—to arrive at the RFC, including Plaintiff's mental limitations in her job. (AR 185–86, 189, 203, 207–08, 675–84, 837, 840–41, 2066). Given this substantial evidence, the ALJ was able to construct an RFC incorporating Plaintiff's moderate limitations in concentration, persisting, and maintaining pace, addressing each specifically.

For all of these reasons, the ALJ's RFC adequately reflected the ALJ's finding of a moderate limitation in concentrating, persisting, and maintaining pace

### B. The ALJ Did Not Violate SSR 00-4p with Respect to the VE's Testimony About the Alternation of Sitting and Standing Positions.

Plaintiff asserts that the ALJ violated SSR 00-4p when considering the VE's testimony because the ALJ: (1) had an affirmative responsibility to ask the VE about the alternation of positions, (2) was significantly unresponsive to the VE's testimony about the conflict of the alternation of positions, and (3) improperly played the role of vocational expert when she asserted that the VE's testimony did not conflict with the DOT. The Court does not find any of these arguments persuasive.

Pursuant to SSR 00-4p, when there is a conflict between occupational evidence provided by a VE and information in the DOT, the ALJ must ask for a reasonable explanation regarding the conflict. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). But critically, for SSR 00-4p to apply, there must first be a conflict between a VE's testimony and the DOT.

To attempt to show that there is a conflict between the VE's testimony and the DOT here, Plaintiff relies on the definition of "sedentary." Plaintiff specifically cites 20 C.F.R. § 404.1567 and SSR 96-9p and asserts that "a binding regulation and a binding Social Security Ruling . . . show that a 'sedentary' DOT occupation requires sitting for two hours without interruption." (Pla.'s Reply, ECF No. 15 at 3). However, Plaintiff completely disregards the "Alternate Sitting and Standing" provision in the definition of "sedentary" under SSR 96-9p. SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996). That provision states "[a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. The RFC assessment must be specific as to the frequency of an individual's need to alternate sitting and standing." *Id.*

13

As the definition of "sedentary" work includes a provision that allows for periodic changes from sitting to standing, Plaintiff's argument that there is a conflict—and that the ALJ failed to ask the VE about it during testimony—must be rejected. During the VE's testimony, the three hypothetical jobs (addressing clerk, document preparer, and table clerk) and their limitations were all explained: the VE described all three as "sedentary and unskilled." (AR 144–45). Next, the ALJ asked whether all three of these positions were consistent with the DOT, and the VE confirmed that they were. (AR 145). So, as the jobs are described as "sedentary" and the definition of "sedentary" specifically provides for periodic sitting and standing, the conflict that Plaintiff alleges is nonexistent.

Further, even if there was a conflict, Plaintiff's argument still fails. Under SSR 00-4p, an ALJ has an affirmative responsibility to ask about any possible conflict between the VE's testimony and the DOT so that the ALJ may obtain a reasonable explanation for the apparent conflict. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). Plaintiff argues that the ALJ had an affirmative duty to ask the VE to ask if periodic sitting and standing were consistent with the DOT. However, as explained above, the definition of "sedentary" already includes a provision regarding a limitation that a claimant be able to sit and stand periodically. In the second and third hypothetical, the ALJ implicitly addressed the concerns regarding periodic sitting and standing by asking whether the "sedentary" jobs were consistent with the DOT. (AR 145). By confirming that they were, the VE testified that they met the definition provided by SSR 96-9p, which allows for periodic sitting and standing. (AR 145). As a result, there would be no conflict as the VE provided three DOT occupations that have in fact been categorized as "sedentary."[2]

---

[2] The ALJ only relied on two of the three jobs identified during the VE's testimony in her decision. *See infra* Section III.C. However, these two jobs are categorized as "sedentary" positions in the DOT and are still subject to the SSR 96-9p definition of "sedentary."

After first confirming that the VE's testimony was consistent with the DOT, (AR 145), the ALJ asked if all three jobs could be performed by an individual who needed to "stand up for five minutes after 30 to 45 minutes of sitting" or needed to be able to stand for no more than 10 to 30 minutes at a time. (AR 145–46). The VE confirmed that all three hypothetical jobs could still be performed even with the ALJ's limitations. (AR 145–46). It logically follows that the ALJ's hypothetical limitations fit within the definitions of each job, and that each is consistent with the DOT. Therefore, the Court finds that the ALJ met her affirmative duty under SSR 00-4p.

Finally, Plaintiff had the opportunity to cross examine the VE during the hearing yet chose not to do so or to explore any alleged conflicts between the VE's testimony and the DOT. (AR 146–49).

For the foregoing reasons, there was no conflict between the VE testimony and the DOT and Plaintiff's arguments fail.

### C. The ALJ Made a Harmless Error and Correctly Identified At Least One Job Which Is Significant in Number in the National Economy.

Plaintiff argues that the ALJ made an error requiring remand when her decision included an occupation from the DOT that had not been suggested by the VE and had not been shown to be representative of the RFC. Plaintiff further argues that, due to the error, the number of positions of the remaining occupations do not represent a "substantial" number. While the Court agrees that the ALJ made a clear error in her opinion, the Court finds that the total number of the other two occupations is "substantial," and thus the error is harmless.

To arrive at a decision, an ALJ must base her decision on evidence presented at the hearing, including the testimony of the VE. *See* 42 U.S.C. §405(b); 30 C.F.R. § 404.953 (2021). At the end of the five-step analysis, to support a finding of lack of disability, an ALJ need only cite evidence that a claimant is capable of performing a job or jobs that exist in significant numbers in the

15

national economy. *Dance v. Comm'r of Soc. Sec.*, Civ. No. 1:20-03141, 21 WL 3144696, at *10 (D.N.J. July 26, 2021); *see Sasse v. Comm'r of Soc. Sec.*, 2019 WL 1233553, at *8 (D.N.J. 2019) (explaining that when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, the ALJ only needs to find one job that was sufficient to support his determination that the plaintiff was not disabled). While "a substantial number of jobs" has to date evaded a definitive definition, the Third Circuit has held that 18,000 jobs in the national economy would be considered sufficiently "significant." *Sanchez v. Comm'r of Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017); *see also Smith v. Comm'r of Soc. Sec.*, No. 19-20682, 2020 WL 7396355, at *7 (D.N.J. Dec. 16, 2020) (citing *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (concluding that the VE's testimony of 20,000 jobs—specifically, document preparer—being available in the national economy is sufficient to support a finding that work exists in significant numbers)).

Here, the VE opined that a similarly-situated hypothetical individual could perform the positions of "addressing clerk," "document preparer," and "table clerk." The ALJ relied on two of these 3 occupations when analyzing Plaintiff's claim as Step 5. (AR 26–27). As to the third, the ALJ apparently erred in her opinion and referred to the job of "tube clerk", which was not the subject of any testimony by the VE, rather than the job of "table clerk." (AR 26–27). While it appears this is a transcription error, it does not matter whether the reference is a clerical error or not because despite relying on the "tube clerk" job as part of her Step 5 analysis, the ALJ never confirmed with the VE that that job would fit into Plaintiff's RFC. (AR 145–46).

Given this obvious error, the Court will disregard this position and only considers whether evidence regarding the "addressing clerk" and "document preparer" positions could support the ALJ's Step 5 determination. Because the "document preparer" position alone has 19,000 jobs in

16

the national economy, this is considered a "significant" number of jobs in the national economy under the Third Circuit standard in *Sanchez*. 705 F. App'x at 99. Moreover, when considering this in combination with the position of "addressing clerk" (3,000 jobs in the national economy) the VE identified a total of 22,000 jobs in the national economy, obviously also sufficiently significant in the national economy. *Young*, 519 F. App'x at 772.

To suggest the contrary, Plaintiff relies on the standard articulated by the Ninth Circuit in *Gutierrez v. Commissioner of Social Security*, which held that 25,000 jobs in the national economy is a "close call." 740 F.3d 519, 528–29 (9th Cir. 2014). While Plaintiff correctly identifies that the Third Circuit's decision in *Sanchez* was not published and is therefore not binding, this Court is more inclined to follow a previous decision within our own Circuit rather than the definition offered by a court beyond our Circuit. Therefore, applying *Sanchez*, the ALJ's determination is supported by substantial evidence.

In sum, even though the ALJ's Step 5 determination was based, in part, on a reference to a job on which the VE did not testify, that error is harmless, and Plaintiff's argument fails.

## CONCLUSION

For the foregoing reasons, the Court will affirm the final decision of the Acting Commissioner. An appropriate Order will be entered.

*[signature: Christine A. O'Hearn]*

**CHRISTINE P. O'HEARN**
**United States District Judge**